INGRI LILLSTROM *vs.* NORTHERN PACIFIC RAILROAD CO.

Argued April 28, 1893.   Affirmed June 12, 1893.

**Railroad Company must Keep in Repair Crossings that it Allows the Public to Use as a Highway.**

The rule laid down in *Kelly* v. *Southern Minn. Ry. Co.*, 28 Minn. 98, that where a road is openly and notoriously used as a highway by the public, and is recognized by a railway company as such, by permitting the public to cross the track, and by assuming to maintain a crossing at that point, it is immaterial that the road has not been legally laid out or established, followed and applied to the facts in this case.

**A Reasonable Probability Arising from the Facts Proved will Support a Verdict.**

In civil actions it is sufficient if the evidence, on the whole, agrees with and supports the hypothesis which it is adduced to prove, and it is the duty of the jury to decide according to the reasonable probability of the truth.

Appeal by defendant, Northern Pacific Railroad Company, from an order of the District Court of Clay County, *Ira B. Mills*, J., made July 25, 1892, denying its motion for a new trial.

Peder Lillstrom died February 20, 1890. He was injured in the manner stated in the opinion. Plaintiff, Ingri Lillstrom, his widow, was appointed administratrix of his estate, and brought this action under 1878 G. S. ch. 77, § 2, as amended by Laws 1889, ch. 109, to recover $10,000 damages for the exclusive benefit of herself and his next of kin.

At the close of all the testimony, the defendant moved the court to direct the jury to return a verdict in favor of the defendant, for the reason that it appears conclusively by the undisputed evidence that the crossing in question was put in by private individuals, at their own instance, and for their own use, and not on any line of any public highway, and that assent to the use thereof by the public had never been given by the defendant. That the injury complained of was not a natural or probable result of taking up the crossing plank, and was not a result to be anticipated to follow from such act. The taking up of the plank was not the proximate cause of the injury. The testimony does not show a cause of action

against the defendant in favor of the plaintiff. The motion was denied, and defendant excepted. The court, among other things, instructed the jury as follows: "From the testimony in this case, it appears that this was not a public highway; there is no evidence that this was a public laid out highway, the testimony is to the contrary. So the defendant had the right as against the public to take up the crossing; there was no duty on it to maintain this crossing. But if you find that the road was frequently traveled and used by the public, and defendant took the crossing up without putting up any barriers or notice, and the deceased had no notice of it, then, if the road was left in a dangerous condition, it would be negligence on its part. If defendant had put up a notice to call the attention of the public to it, then the public could not have complained. Whatever were its duties to the farmers who had built the crossing, it was under none to the public. But if defendant took up this crossing without putting up barriers or something to notify the public, then, if the public had been using it much, the plaintiff can recover, provided the deceased was free from negligence. The deceased was bound to use such reasonable and ordinary care as a prudent man would use at such a crossing. The crossing having been maintained by the defendant, the deceased had a right to suppose that it was in a reasonably safe condition, that is, such condition as it was in before; but he was bound not only by what he had seen, but by what he did see there, and he was bound to keep such lookout for danger as an ordinary person would do under the same circumstances." To the giving of these instructions, defendant duly excepted.

Plaintiff had a verdict January 12, 1892, for $4,500. Defendant moved for a new trial, and being denied, it appeals.

*J. H. Mitchell, Jr.,* and *Tilden R. Selmes,* for appellant.

*W. B. Douglas* and *Davis, Kellogg & Severance,* for respondent.

Collins, J. The plaintiff's intestate, her husband in his lifetime, came to his death through the negligence of defendant railway company, it is claimed, and in this action, which was brought to recover for the alleged wrongful killing, plaintiff had a verdict. The facts as established on the trial were that, when living, the deceased resided with his family on a farm in a prairie country about one

mile east of defendant's line of railway. On the morning of February 18, 1890, he left home with a pair of horses attached to bob sleighs to go several miles northwesterly for a load of wood, to obtain which he had to cross to the west side of said line of railway. Leading in the direction he had to go was a generally traveled wagon road, which crossed the railway about five miles from his residence. This road, at least where it crossed the track, was not a regularly laid out highway, but it, including the crossing, had been used by the public for several years. Immediately after the railway was constructed, some five years before the accident in question, two farmers residing in the vicinity had prepared the crossing by digging the approaches, and by placing planking inside and outside the rails. The defendant's section men took charge of the crossing at once, repaired the planking, replaced the same as needed, and otherwise kept the same in proper condition for travel, as fully as if it had been a legally laid out or established highway. The evidence was abundant upon this point, and also that the traveling public had very generally crossed the railway at this place while it had been maintained, preferring it to other crossings on either side. The planking between the rails before mentioned had been kept in place continuously from the time it was first put in until about one month prior to the day on which Lillstrom received his injuries, and was then removed by defendant's section men to prevent the accumulation of snow at that point, and thus facilitate the operation of the railway. No sign was put up, or barriers erected, to notify the traveler of this removal.

On the trial it was shown that, in his lifetime, Lillstrom had used this crossing, and when it was in good repair. It appeared that he crossed at another place when going for the wood, and it was not shown that he had been at this crossing at all after the planks were taken up, until he was injured.

The 19th of February was a stormy day. About 4 P. M. a neighbor discovered Lillstrom lying upon the ground, then covered with snow, at this crossing. His horses, attached to the bob sleighs with one trace only, stood on the west side of the rails. One single-tree was broken. Upon the sleighs was a heavy load of wood. He had evidently approached the place along the road from the west, (the railway running north and south,) for the rear bob stood west

of the rails in the traveled track, while the forward bob stood lengthwise and upon the rails, faced to the south. Lillstrom lay across the rails in front of the forward bob. He was conscious, and said that he had broken his neck. His injuries were such as to cause his death the following day.

1. It is contended by defendant company that because the crossing in question was not upon a public highway, regularly laid out or established, it owed no duty to the public to keep it in repair, and therefore was not guilty of negligence when removing the planking from between the rails. As hereinbefore stated, the evidence was plenary that the crossing was openly and notoriously used as such by the public, and that defendant had recognized it as such by permitting the public to use it. It had assumed to maintain a crossing at that point for years, and all of the time had encouraged its use by keeping it in repair. It owed the duty of reasonable care to those using the crossing, and was bound to exercise precisely the same precautions to keep it in repair as if it was in fact upon a legally laid out or established highway. *Kelly* v. *Southern Minn. Ry. Co.*, 28 Minn. 98, (9 N. W. Rep. 588.) To the same effect are the cases of *Ewen* v. *Chicago & N. W. Ry. Co.*, 38 Wis. 634; *Barry* v. *New York Cent. & H. R. R. Co.*, 92 N. Y. 289; *Murphy* v. *Boston & Albany R. Co.*, 133 Mass. 121; and *Taylor* v. *Delaware & H. Canal Co.*, 113 Pa. St. 162, (8 Atl. Rep. 43.)

The question of defendant's negligence was properly one for the jury to pass upon.

2. It is further contended by defendant company, even if its negli-gence be established, that there was no testimony tending to con-nect the accident which befell Lillstrom with such negligence; in other words, that it was not shown that the removal of the planks was the cause of his death.

We have stated the circumstances under which he was found, and undoubtedly the jurors came to the conclusion that they were warranted in believing that, while Lillstrom was attempting to cross defendant's track at the crossing with a heavy load of wood upon his bob sleighs, the runners of either the forward or the rear bob, or both together, struck the rails, which projected a few inches above the snow, with such violence as to suddenly stop the horses, cause

one singletree to break, three out of the four traces to become detached, and to throw the forward bob at right angles with the one in the rear, all concurring to precipitate Lillstrom, who, as driver of the horses, would naturally sit upon the top of the load of wood, with great force to the ground, across the rails, and in front of his sleighs, where he was found, so injured that he died the next day. The facts as related upon the trial fully justified the jury in believ- ing that the accident happened in this way, and that the removal of the planking was the primary cause of the injuries. It was not necessary for plaintiff to show by an eye-witness exactly how these injuries were received, in order to recover, and that is really what was demanded by defendant's counsel on the argument here. It is not necessary in any action, civil or criminal, that the material facts should be established by direct evidence. In civil cases it is sufficient if the evidence, on the whole, agrees with and supports the hypothesis which it is adduced to prove, and it is the duty of the jury to decide according to the reasonable probability of the truth. 1 Greenl. Ev. (15th Ed.) § 13a.

There was no direct evidence as to the exact manner in which Mr. Lillstrom was fatally injured, but there were circumstances in evidence from which it may be justly and fairly inferred that, when the runners of his sleighs struck the projecting rails, the shock was such as to throw him upon and across the rails with great force and violence. If such be the fair and just inference to be deduced from the evidence, it was sufficient. *Indianapolis, P. & C. Ry. Co.* v. *Collingwood,* 71 Ind. 476; *Indianapolis, P & C. Ry. Co.* v. *Thomas,* 84 Ind. 197; *Hays* v. *Gallagher,* 72 Pa. St. 136.

The case of *Orth* v. *St. Paul, M. & M. Ry. Co.,* 47 Minn. 384, (50 N. W. Rep. 363,) cited by counsel for appellant, was altogether dif- ferent from that at bar.

3. This brings us to a consideration of the claim of appellant's counsel that plaintiff cannot recover because there was no evidence produced upon the trial that Lillstrom was exercising ordinary care and caution when attempting to cross the rails. The presumption is that he was, and that he was not guilty of contributory negligence. Such is the settled law in this state, and the cases cited by counsel are from states in which the opposite rule prevails. There was

nothing in the established facts which tended to indicate that he failed to exercise due care when approaching the crossing, of which he had some knowledge. To be sure, the planks had been removed, and to a careful, or perhaps even to an ordinary, observer, this might have been obvious. But Lillstrom knew that the crossing had been kept in good condition, and to some extent was warranted in relying upon this knowledge. It was a stormy day in winter, with snow upon the ground which had drifted in, thus rendering the projecting rails and the absence of the planking less noticeable than would have been the case under other circumstances. Again, it was a railway crossing where the danger to be apprehended was from approaching trains, and where a traveler who knew of the previously good condition of the way would naturally be paying more attention to the right and left along the track than he would to the road over which he was traveling. But even had Lillstrom known of the defective condition of the crossing before he came to it, or had he then observed it, contributory negligence could not conclusively or necessarily be attributed to him. This would depend upon circumstances. It was not made to appear that the crossing was in so dangerous a condition but that a man of ordinary prudence might have reasonably supposed that, with the snow partially filling the space between the rails, and in the exercise of ordinary care, he could drive over in safety. *Nichols* v. *City of Minneapolis*, 33 Minn. 430, (23 N. W. Rep. 868.)

4. We have examined each of the assignments of error not covered by the foregoing, and there are none which need special attention.

Order affirmed.

VANDERBURGH, J., did not participate.

(Opinion published 55 N. W. Rep. 624.)