## BERTHA L. THOMPSON v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

### June 2, 1916.

### Nos. 19,707—(110).

**Finding of negligence sustained.**

    1. The evidence justified a finding that the conductor of a train

[1]Reported in 158 N. W. 42.

---

Note.—As to effect of relation of proximate cause doctrine to master's liability for injuries to servant from combined negligence of himself and fellow servant, see note in 16 L.R.A. 819. And as to rule when dangerous condition is due to act of fellow servant, see note in 41 L.R.A. 54.

As to constitutionality, application and effect of the Federal Employers' Liability Act, see comprehensive notes in 47 L.R.A.(N.S.) 38, L.R.A. 1915C 47.

engaged in a switching operation negligently gave a stop signal and caused a stop while the plaintiff's intestate was on the end sill of a car engaged in coupling, without a signal from him, and without knowing whether he was ready or prepared for a stop.

**Federal Employer's Liability Act — assumption of risk.**

2. Under the Federal Employer's Liability Act an employee does not assume the risk of the negligence of a fellow servant; and under the evidence the plaintiff's intestate, who went from the top of the car down the end ladder and stood on the end sill and from there uncoupled, did not assume as a matter of law the risk of a negligent stop signal given by the conductor, nor did he assume as a matter of law the risk of an improper switching operation, nor was he chargeable as a matter of law with an assumption of risk because he did not swing around the end of the car and stand in the side stirrup and uncouple from there by the use of the pin-lifter.

**Proximate cause of death.**

3. Under the evidence the cause of the death of the plaintiff's intestate was not as a matter of law conjectural, and it warranted the inference of the jury that the negligent giving of a stop signal was the cause.

Action in the district court for Ramsey county by the administratrix of the estate of Charles E. Thompson, deceased, to recover $30,000 for the death of her intestate while in the employ of defendant. The case was tried before Dickson, J., who when plaintiff rested denied defendant's motion to dismiss the action, and a jury which returned a verdict for $9,500. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*W. H. Bremner* and *F. M. Miner,* for appellant.

*Barton & Kay,* for respondent.

DIBELL, C.

Action to recover for the death of plaintiff's intestate while in the employ of the defendant. There was a verdict for the plaintiff. The alternative motion of the defendant for judgment or for a new trial was denied. From the judgment entered upon the verdict it appeals.

1. The plaintiff's intestate, Charles E. Thompson, was killed at Hed-

rick, Iowa. He was employed by the defendant as a brakeman in interstate commerce. He was engaged at the time in getting some cars from a switch track and putting them into the interstate train on which he was brakeing. He was between two cars for the purpose of uncoupling. The negligence claimed is that the conductor, who was working with him and directing movements, not knowing his exact position, and not knowing whether he was ready to have the cars slackened, and without a signal from him, gave a stop signal and caused them to stop, thereby jerking him from his position and causing his death. Negligence can be predicated upon the facts stated. See Union Pac. R. Co. v. Brady, 161 Fed. 719, 88 C. C. A. 579; Moores v. Northern Pac. Ry. Co. 108 Minn. 100, 121 N. W. 392; Hurley v. Illinois Central R. Co. supra, page 101, 157 N. W. 1005. Whether facts constituting negligence existed was not at all free of doubt on the evidence but the question was for the jury. The verdict might have been either way. It might well enough have been for the defendant.

2. Thompson was on top of one of the cars just prior to making the cut. He was directed by the conductor to uncouple. He went down the ladder at the end of the car between the two which were to be uncoupled. There was no side ladder. The custom was, in operations like this, to stand on the sill at the end of the car and pull the pin.

The defendant claims that as a matter of law Thompson assumed the risk. The court was not asked to charge and did not charge upon the assumption of risk. The question upon this appeal is whether as a matter of law Thompson assumed the risk, for if he did the motion to direct a verdict should have been granted. An employee in a case to which the Federal Employer's Liability Act is applicable does not assume the risk of the negligence of a fellow servant. The defendant does not claim otherwise. Its claim is that Thompson was familiar with this operation and assumed whatever risk there was connected with the doing of the work as it was done; and that in any event he should have swung around the side of the car, stood in the side stirrup, and from there lifted the pin by the use of the pin-lifter, and should not have uncoupled in his position between the cars, and that in doing as he did he assumed the risk. It may be conceded that Thompson assumed the ordinary danger resulting from the bumping or jerking of the cars in the usual operation, or, which is the same thing in result, that the defendant was not negligent

in not protecting him against the jars and jerks necessarily incident to an ordinary switching operation. It does not follow that he assumed the risk of a jerk caused by the conductor negligently signaling a stop without notice of it to him and without his being ready for it or anticipating it. The evidence did not require a finding that Thompson knew or should have known that the conductor was likely to give a stop signal at the particular time without seeing that in his work of uncoupling he was ready for it, or that from the conduct of similar operations he should have anticipated that a stop would be made before his work required it. He did not as a matter of law assume the risk of the particular operation. In reaching this conclusion every construction of the evidence and law is made favorably to the defendant. Nor did Thompson as a matter of law assume the risk because he did not come down the end ladder, swing around the car into the side stirrup, and from there uncouple by the use of the pin-lifter lever. We have not overlooked the line of cases, of which Union Pac. R. Co. v. Brady, 161 Fed. 719, 88 C. C. A. 579, is typical, holding the principle that one assumes the risk who without necessity chooses a dangerous way when a safe one is open to him, and applying it to the situation of a brakeman who goes between cars to couple or uncouple instead of using the pin-lifter. Here the brakeman, in going down the end ladder and uncoupling while standing on the sill, was following the custom sanctioned by the company. He was where the company expected him to be. The danger was not at all like that of going between the cars from the ground and coupling or uncoupling. The evidence explains this, and the evidence is that work between the cars, in the position in which Thompson was, was not from a railroad standpoint peculiarly dangerous. The negligent starting or stopping of a car might make it perilous as it might make other work about the train.

The trial court was of the opinion upon the hearing of the alternative motion that there was no question of the assumption of risks involved. This may be so. We have, however, considered the question from the point of view most favorable to the defendant. In no event can it be held that there was an assumption of risks as a matter of law.

3. It is a further contention of the defendant that the cause of the death of deceased is merely conjectural. We cannot so hold. It was a matter of fair inference by the jury that an unexpected jerk coming from

the negligent giving of the stop signal by the conductor caused the plaintiff's death. The cause was not a mere matter of speculation. Lillstrom v. Northern Pac. R. Co. 53 Minn. 464, 55 N. W. 624, 20 L.R.A. 587; Rogers v. Minneapolis & St. Louis Ry. Co. 99 Minn. 34, 108 N. W. 868; Johnson v. Lindahl, 106 Minn. 382, 118 N. W. 1009; Moores v. Northern Pac. Ry. Co. 108 Minn. 100, 121 N. W. 392; Bruckman v. Chicago, St. P. M. & O. Ry. Co. 110 Minn. 308, 125 N. W. 263; La Pray v. Lavoris Chemical Co. 117 Minn. 152, 134 N. W. 313; Demerce v. Minneapolis, St. P. & S. S. M. Ry. Co. 122 Minn. 171, 142 N. W. 145; Murphy v. Twin City Taxicab Co. 122 Minn. 363, 142 N. W. 716; Mitton v. Cargill Ele. Co. 124 Minn. 65, 144 N. W. 434; Lewis v. Chicago G. W. R. Co. 124 Minn. 487, 145 N. W. 393; Crandall v. Chicago G. W. R. Co. 127 Minn. 498, 150 N. W. 165; Diebel v. Wolpert, Davis & Co. 129 Minn. 77, 151 N. W. 541; Fitzgerald v. Armour & Co. 129 Minn. 81, 151 N. W. 539; Kludzinski v. Great Northern Ry. Co. 130 Minn. 222, 153 N. W. 529; Hurley v. Illinois Central R. Co. supra, page 101, 157 N. W. 1005.

We have examined all the other claims of the defendant but do not find it necessary to discuss them.

Judgment affirmed.