## GLADYS L. MacINTOSH, AS ADMINISTRATRIX v. GREAT NORTHERN RAILWAY COMPANY.[1]

January 27, June 23, 1922.

No. 22,699.

**Use of railway headlight—question of negligence for jury.**

1. Whether the defendant was negligent in using on an engine tender in a switching operation conducted at the time the plaintiff's intestate was killed, a headlight and reflector giving so glaring a light as to blind the switchmen at a distance of 4 or 5 car-lengths was for the jury.

**Death of servant—question for jury—verdict on circumstantial evidence.**

2. Whether the death of the plaintiff's intestate was caused by a blinding headlight was a question for the jury, and its finding in the affirmative was not based on mere conjecture, though the evidence was circumstantial.

**Assumption of risk for the jury.**

3. Whether the deceased assumed the risk coming from the use of the blinding headlight was a jury question.

[1]Reported in 188 N. W. 551.

Action in the district court for Sherburne county to recover $50,-500 for the death of plaintiff's intestate. The answer alleged that the work of decedent involved risks which were obvious. The case was tried before Johnson, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $7,000. Defendant's motion for judgment notwithstanding the verdict was denied. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed on reargument.

· *Dille, Hoke, Krause & Faegre* and *Tracy J. Peycke*, for appellant.

*Barton & Kinkead*, for respondent.

DIBELL, J.

Action by the plaintiff as administratrix of Edwin C. MacIntosh, her deceased husband, to recover damages under the Federal Employers Liability Act for his death.

There was a verdict for the plaintiff. The defendant moved alternatively for judgment notwithstanding the verdict or for a new trial. The motion was denied. The defendant appeals from the judgment for the plaintiff. The applicability of the Federal act is not questioned. Whether the evidence sustains the verdict is the inquiry. This involves the question of the defendant's negligence, and the question of the causal connection of such negligence with the decedent's death, and the question of assumption of risks.

1. MacIntosh was in the employ of the defendant as a switchman and while so engaged was killed in the railroad yards at Minneapolis at 3 o'clock in the morning of December 11, 1920. The claim of negligence is the use at the time on the tender of a headlight and reflector giving so brilliant a light that it blinded him in the course of his work. The state statute requires, on "every locomotive engine regularly used in switching cars or trains, a headlight of at least fifty (50) candle power measured without the aid of a reflector." G. S. 1913, § 4421. It does not contemplate a headlight blinding without or with a reflector. The Federal statute is silent. That used on the tender was an electric light of 50 candle power. An engine reflector was used with it. This as a matter of common knowledge greatly increased its glare and blinding effect. It blinded the

men at a distance of 4 or 5 carlengths.   Without a reflector the glare was inconsiderable.   With a locomotive reflector it was great and became blinding.   The headlight could be switched on or off from the engine cab.   Sometimes it was on and sometimes it was switched off.   Switching it off seems to have involved no effort or inconvenience worth mentioning.   The particular switching operation carried on at the time gained nothing from the presence of the headlight.   The engine was going in a forward movement drawing the empty flat cars.   The movement was from one-third to one-half a mile.   The headlight on the engine lighted in the direction it was going.   The headlight on the tender served no useful purpose at the time.   It was not a warning or protection to workers about the tracks.   It lighted the tops of the flat cars but to no advantage. The undisputed testimony of the switchmen is that it was of no use to them in their work.[1]   There might better have been none, and it could have been turned off without trouble.   Then no one would have been blinded in his work by its glare.   And a light of the same candle power, without the added power of an engine or other reflector, would not have been blinding.   Whether it was negligence to have such a headlight in use at the time was for the jury.   The case of Roach v. Great Northern Ry. Co. 133 Minn. 257, 158 N. W. 232; Great Northern Ry. Co. v. Roach, 242 U. S. 624, 37 Sup. Ct. 245, 61 L. ed. 534, cited by the plaintiff, is of value only upon the proposition that a headlight used in switching operations may be so glaring that its use is negligent.   In its facts it is without useful application to the situation before us.

2..   MacIntosh and the switch foreman went with the engine and tender, in a backward movement, to a string of 15 empty flat cars which they were to put into a train.   They rode the foot-board of the tender.   They coupled the cars when they were reached.   MacIntosh went on top to release brakes, going toward the rear. McCarthy went along the side to see that the cars were coupled. He made a cut at the end of the fifteenth car.   He then signaled, and the train moved forward a distance of one-third or one-half a mile.   A car-length beyond the switch it stopped in response to his

[1See correction in 4th paragraph on page 532.—Reporter.]

signal. MacIntosh was not in sight. MacCarthy walked along the train toward the engine, and some 3 car-lengths beyond the switch found MacIntosh's lantern, and about 2 car-lengths further found him under the cars with his legs across one of the rails and so badly injured that he died soon after reaching the hospital. The theory of the plaintiff is that MacIntosh went along on top of the string of flat cars, releasing the brakes, and on his return fell between two of the cars, some 3 or 4 car-lengths from the engine, and that his fall was caused by the glare of the headlight. It was his duty to return to the engine when the brakes were released, for his next work was there. The evidence is that the headlight would blind a man 4 or 5 car-lengths from the tender.

It is urged by the defendant that how the accident happened is a matter of conjecture upon which a verdict for the plaintiff cannot rest. The general rule of law is well understood. While the evidence in proof of the cause of the accident may be circumstantial, it must not leave it in the field of conjecture. The burden of proof is upon the plaintiff. It is not enough that the evidence be consistent with the theory of the accident. It must go further—it must support it. It must justify an honest inference. It is not enough that it suggest a possibility. Lillstrom v. Northern Pac. R. Co. 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587; Rogers v. Minneapolis & St. L. Ry. Co. 99 Minn. 34, 108 N. W. 868; Moores v. Northern Pac. Ry. Co. 108 Minn. 100, 121 N. W. 392; Hurley v. Illinois Cent. R. Co. 133 Minn. 101, 157 N. W. 1005.

The wheels of the third or fourth car from the engine had blood on them. The deceased got between the two cars in some way and was run over. This is not conjecture. He might have slipped or stumbled and have fallen, from no assignable cause, and his death have been the result of a mere accident. Such accidents sometimes happen. Ordinarily a brakeman passing from empty flat car to flat car takes care of himself easily. The deceased was a man of 39 years, and as the evidence shows was small and very active on his feet. The glare of the headlight, as he came from one car to another, and looked up as he was about to cross, may have blinded and dazzled him and caused a misstep or a mistaken movement and the resultant

accident. The place of the accident was at a point where he would have met the blinding glare in going toward the engine and looking to his step as he was about to cross from car to car. It is fairly to be inferred that he was going toward the engine, for his work required his presence there soon in connection with the train movement. There is no suggestion that he was getting off the car. There was no purpose in his doing so. He would naturally stay on. We are unable to say that a jury, fairly considering the evidence, could not find an explanation of the accident. Any explanation, other than that advanced by the plaintiff, is conjectural. If that is conjectural the cause of the accident baffles successful investigation, and it is left a mystery. We reach the conclusion that a jury of practical men, weighing the evidence fairly, and drawing legitimate inferences, and without indulging in mere speculation, might find that MacIntosh was on his way to the engine, and was about to step from one car to another, when he was blinded by the headlight, and was caused to fall between them, and that his death resulted.

In McNamee v. Hines, 150 Minn. 97, 184 N. W. 675, where it was held that a causal connection between the negligence alleged and the injuries suffered was not shown, a number of cases are collected. The case of Bruckman v. Chicago, St. P. M. & O. Ry. Co. 110 Minn. 308, 125 N. W. 263, is one of the strongest on its facts in support of the defendant's contention, and Lewis v. Chicago G. W. R. Co. 124 Minn. 487, 145 N. W. 393, is of force. Illustrative cases, favorable on their facts to the plaintiff, are Mitton v. Cargill Elev. Co. 124 Minn. 65, 144 N. W. 434; Crandall v. Chicago G. W. R. Co. 127 Minn. 498, 150 N. W. 165; Kludzinski v. Great Northern Ry. Co. 130 Minn. 222, 153 N. W. 529; Thompson v. Minneapolis & St. L. R. Co. 133 Minn. 203, 158 N. W. 42; Myers v. Pittsburgh Coal Co. 233 U. S. 184, 34 Sup. Ct. 559, 58 L. ed. 906.

3. Whether the deceased at the time of his death appreciated the danger and assumed the risk of the blinding headlight was for the jury. It seems that sometimes, in a switching operation such as was being carried on, the light was switched off, and that sometimes it was left on. We cannot say as a matter of law that the deceased appreciated and assumed the risk. Upon this question the case is

fairly ruled by Roach v. Great Northern Ry. Co. 133 Minn. 257, 158 N. W. 232; Great Northern Ry. Co. v. Roach, 242 U. S. 624, 37 Sup. Ct. 245, 61 L. ed. 534.

The questions discussed are of course debatable, and the result reached is not free of doubt. In some of its aspects the case may be in the class designated as border line cases; but after a careful view of the evidence we are content to hold that it was for the jury.

Judgment affirmed.

On June 23, the following opinion was filed:

DIBELL, J.

A reargument was granted. The court indicated that it desired to hear counsel "upon the question whether the cause of the death of the decedent is shown by reasonable inference or is a matter of conjecture only; and in this connection it is desired that they present their views whether the evidence reasonably shows that the next duty of the deceased, after examining the brakes on the top of the cars, called him to the engine and tender, and that it can be inferred reasonably that he was going in that direction and met the glow of the headlight and because of it fell between the cars."

Counsel was given an opportunity also to present in their briefs their claim of a misinterpretation of the testimony by the court relative to "the value of the use of the headlight on the tender at the time decedent was killed." This matter calls for a correction but for no discussion. The statement in the opinion that "the undisputed testimony of the switchmen is that it was of no use to them in their work" is inaccurate. The only testimony upon this point is that of McCarthy, the switch foreman; and it is uncertain whether he had in mind the use of the headlight to him in his position on the night of the accident or was speaking generally. The matter is of incidental importance only and not at all controlling of the result on appeal.

The important question is whether it could be reasonably inferred that the decedent was going in the direction of the headlight and because of its glare fell between the cars. We have re-examined the evidence. There is a suggestion that MacIntosh would naturally

have gotten off at the switch and would have been there when his foreman got off the rear end on the return movement described in the opinion. There was no need of MacIntosh at the tender until there was an uncoupling to be made and that was not until the engine and tender had again passed the switch. The fact that the foreman called "Mac" when he gave the stop signal and got off at the switch indicates that he expected MacIntosh there at the time. There was confusion on the prior argument as to the train movements partly because of the absence of the plat which is before us on this hearing and makes the situation clearer. The evidence is still indefinite as to what would have been the natural place for MacIntosh, whether at the tender or on the ground in the vicinity of the switch. The majority of the court, upon a reconsideration of the evidence, are of the opinion that the jury might find, as it did, that MacIntosh was on his way to the tender, as suggested in detail in the original opinion; and having in mind too that this is not a motion in the alternative, but that the defendant chooses to rest upon the absolute right to a verdict, are of the opinion that the decision reached on the former hearing should not be changed.

The Chief Justice and the writer are of the view that the evidence is too uncertain to warrant an inference that MacIntosh came to his death by a fall between the cars caused by the negligent use of a glaring headlight; that it is just as justifiable an inference that he naturally would be on the ground at the switch where McCarthy expected him, and in the vicinity of where his lantern was found; that it is just as reasonable an inference that he was killed in getting off as the drag approached the switch, or in some other way not connected with a blinding by the headlight on a return to the tender; and that the record does not suggest that upon another trial additional evidence helpful to the plaintiff would be available.

The court adheres to the former decision and the judgment stands affirmed.