## RUTH PHILLIPS v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY.[1]

January 9, 1931.

No. 28,265.

*Nelson & Nelson,* for appellant.
*F. W. Root, C. O. Newcomb* and *A. C. Erdall,* for respondent.

LORING, J.

The plaintiff has appealed from a judgment entered pursuant to an order granting judgment notwithstanding a verdict of $7,500 in favor of the plaintiff for damages due to the death of her husband while employed as a section hand on defendant's railroad.

[1]Reported in 234 N. W. 307.

Plaintiff was riding upon a motor car used by a section crew to which he did not belong. He got on the car at the conclusion of work for the day for the purpose of riding about 800 feet to a point near his home. Above and around the engine in this car was built a housing which formed a convenient level seat about 20 inches above the platform of the car. Forming this seat over the engine were two boards extending lengthwise of the car, neither of which was fastened down to the structure but had cleats underneath. These had a tendency to prevent a sidewise movement of the boards. There was a slot in the left-hand board through which protruded the brake lever, and there was another opening on the inner edge which was a hand-hole through which to get at the engine on occasions when it was not necessary to remove the whole board. This hand-hole furnished a place where a man could take hold of the board. The boards had been screwed down when the car was received from the factory some two or three years previous to the accident, but the screws had been removed and the boards left unfastened so as to provide ready access to the engine, which was in the middle and towards the front of the car. Along the sides of the housing built over the engine was a space on the platform of the car which was used for carrying tools and which is referred to in the record as the tool tray. This tray formed a convenient place for the feet of employes sitting on the boards above referred to. Along the outer edge of the tool tray was a two by six or two by eight plank set in such a way as to form a side for this tool tray. The tray was about a foot wide and extended the full length of the car on each side.

The plaintiff's husband got onto the front part of the car, sat on the board on the left side, and took hold of a brace conveniently located for a hand-hold. There was a hand-hold extending across the end of the car above the engine housing and from this the brace extended back diagonally to the housing.

After the car had gone about 300 feet the plaintiff's husband fell off and was killed, and the question presented by the record is whether or not the deceased fell off because of defendant's negligence.

Although other men were riding on the car, no one can explain how deceased came to fall off. The man who sat on the right side missed decedent's hand from the brace and saw that he was standing up facing the housing but did not see the position of his hands or shoulders. His hands were not at his sides. He fell off, probably backwards, just about the time the car passed a switch. The board on which he had been sitting had been moved toward the outside of the car about two inches just before he fell, but no one saw whether or not he took hold of it or what was the cause of its movement. It could not be moved so long as he sat upon it. The plaintiff's theory is that he got up, took hold of the board by means of the opening before mentioned, and on account of the board not being screwed down he lifted it slightly, lost his balance and fell. The trial court was of the opinion that this was conjectural and that the circumstances being just as consistent with other theories of how the accident happened, the jury were not justified in a finding that this was the way it occurred. The trial court was also in grave doubt as to negligence being established on the part of the defendant. The sole ground of negligence claimed by appellant is the fact that this board, held in place as it was by the brake lever, the cleats and the men who sat upon it, was not also fastened to the housing.

We are of the opinion that the trial court was right in granting judgment. Circumstantial evidence may be resorted to in order to establish the manner of the occurrence which results in injury, but if it is just as consistent with other theories of the cause of the accident for which the defendant is not responsible, it alone is not sufficient to sustain a verdict. In other words, the usual rule applied in civil cases as to the probative force of circumstantial evidence prevails here. The evidence must justify the inference that the accident resulted from the cause for which the defendant is responsible. Nealis v. C. R. I. & P. Ry. Co. 173 Minn. 587, 218 N. W. 125. We are of the opinion that in the case at bar no such inference was justified. "No inference of fact or of law is reliable drawn from premises which are uncertain." U. S. v. Ross, 92 U. S. 281,

283, 23 L. ed. 707; Schendel v. C. M. & St. P. Ry. Co. 165 Minn. 223, 232, 206 N. W. 436. The plaintiff has the affirmative of the issue, and if the cause of her husband's death is left in the realm of conjecture her case fails. The causal connection not being established between the acts charged as negligence and the death of plaintiff's husband, it is unnecessary to comment on the question of whether or not the defendant was negligent in leaving the board seat unfastened.

Judgment affirmed.